O’Neill, J.
The question which is posed for this court may be simply stated.
Does the General Assembly have the power, under the Constitution, to authorize by statute the county central committee of a political party to appoint a person to fill a vacancy in an elective, county office who can then perform the duties of the office until a successor is elected and qualified?
The answer to this question is found in Section 27, Article II, and Section 1, Article X, of the Ohio Constitution, in Section 305.02, Revised Code, and in the rule of law pronounced by this court in the case of State, ex rel. Attorney General, v. Kennon, 7 Ohio St., 546.
Section 27, Article II, provides as follows: ,
“The election and appointment of all officers, and the filling of all vacancies, not otherwise provided for by this Constitution, or the Constitution of the United States, shall be made in such manner as may be directed by law; but no appointing power shall be exercised by the General Assembly, except as prescribed in this Constitution; and in these cases, the vote shall be taken ‘viva voce.’ ”
*373 Section 1, Article X, provides as follows: •
“The General Assembly shall provide by general law for the organization and government of counties, and may provide by general law alternative forms of county government. * * * ”
Section 305.02, Revised Code, provides:

u* * *

“(B) If a vacancy occurs from any cause in any of the offices named in division (A) of this section [clerk of courts is one of the offices so named], the county central committee of the political party with which the last occupant of the office was affiliated shall appoint a person to hold the office and to perform the duties thereof until a successor is elected and has qualified. Appointments made under this division of this section shall be certified by the appointing county central committee to the county board of elections and to the Secretary of State, and the persons so appointed and certified shall be entitled to all remuneration provided by law for the offices to which they are appointed.”
Section 305.02, Revised Code, has constituted the members of a county central committee of a political party public officers.
In the Kennon case, supra, Judge Brinkerhoff said at page 556:
“What is an office? Among lexicographers, Webster defines the word to signify ‘a particular duty, charge, or trust conferred by public authority and for a public purpose.’ In a case in 20 Johns. 492, Platt, J., delivering the opinion of the court, defines the legal meaning of the word to be, ‘an employment on behalf of the government, in any station or public trust, not merely transient, occasional, or incidental.’
“If we accept either or both of these definitions as substantially correct, it is clear to our minds, that if these statutes are held valid, these defendants [three individuals named by the General Assembly to appoint and supervise’- the work of a three-member board denominated commissioners of the Statehouse and to appoint three directors of the Ohio Penitentiary] are officers. Theirs is a public duty, charge, and trust, conferred by ptiblic authority, for public purposes of a very weighty and important character.”
The election and selection to fill vacancies of county central committeemen of a political party are regulated by statute *374 (Sections 3513.19, 3513.191, 3517.03 and 3517.05, Revised Code).
The power conferred by Section 305.02, Revised Code, upon central committeemen makes them public officers. Kennon case, supra.
The Kennon case, supra, stands for the proposition that, assuming the Legislature can confer upon a board, commission or committee the power to make appointments, not prescribed by the Constitution, by a proper legislative delegation of power, the Legislature can not name the individuals who are to constitute the board, commission or committee. To do the latter would be an exercise of the power of appointment prohibited by the Constitution.
This is made clear by the opinion of Judge Brinkerhoff, at page 563:
“We conclude, therefore,
“1. That the selection and designation, by name, of the defendants, by the General Assembly, to exercise continuously, and as a part of the regular and permanent administration of the government, important public powers, trusts, and duties, is an appointment to office.
“2. That these appointments are clearly prohibited to the General Assembly by the Constitution, are not within any exception to such prohibition, and are, therefore, null and void. ’ ’
Judge J. R. Swan, writing a concurring opinion, made even more pointed what was decided by the Kennon case, supra, and, therefore, what is its proper application to the instant case, at pages 572 and 573:
“Whether, therefore, there be any difference between the General Assembly creating an office and appointing the incumbent thereof, or annexing the power of appointment to an office already existing and filled, has no application whatever to the case before us.
“But it may be proper to inquire whether there is not a difference in this respect; that is, whether the General Assembly in fact exercise the appointing power, by annexing to an office already existing and filled, the power of making appointments and filling vacancies.
“If the General Assembly annex to an office already existing and filled additional powers and duties, upon what ground can it be claimed that this is the exercise by the General As *375 sembly of tbe appointing power? Certainly upon this only, that the General Assembly has enlarged or added to the powers and duties of an existing office. But this is really absurd; for, if adding to the duties or powers of existing offices is an exercise of the appointing power, then every new duty required, or power conferred upon any state, county, or township officer, must be deemed the exercise by the General Assembly of the appointing power, and forbidden by the Constitution.
“But these fallacious positions arise out of a misapprehension of what is meant by the exercise of the appointing power. An office, until filled, is an impersonal thing — an incorporeal hereditament. It is filled by the exercise of the appointing power, and when filled, the office and officer both exist. The office itself may by law be enlarged in its powers, or new duties enjoined, without touching the appointment or tenure of office of the incumbent or his successor. It would therefore seem highly probable, although the .question is not before us, that the General Assembly could, without displacing or appointing a Governor of Ohio, annex to the office of Governor the power of oppointing directors of the penitentiary, or the duty of performing any other legitimate executive function.
“If the General Assembly conferred upon the incumbent of the gubernatorial ehair official public powers as an individual, so that he would continue to exercise the powers thus conferred, whether he continue to hold the office of Governor or not, it would seem quite manifest, to my mind, that the General Assembly created an office in such case, and exercised the appointing power. But these questions are not before us, except to comment upon with a view to aid those who seem to be unable to distinguish between an office and an officer — between official powers conferred by law upon and annexed to an office, and the individual incumbent or officer.
66 # # #
‘ ‘ The questions before us have been so far misapprehended, that it is necessary to say distinctly, that we do not decide whether a board of appointment, such as these laws create, may or may not be constitutionally created; for it is unnecessary to decide it. But we hold that the General Assembly can not appoint the officers of such a board. Whether the General Assembly can annex the power of appointment of the directors *376 of the penitentiary and Statehouse commissioners to the office of Governor, or to any other existing office or board, we do not decide, simply because the question is not before us.”
The relator contends that granting the power to the central committee to fill vacancies in elective county offices by the Legislature amounts to the appointing by the Legislature of the incumbent members of the central committee to a public office for the purpose of exercising this power. Relator fails to distinguish between the office and the officer. The Legislature has not named any individual to the office of central committeeman by granting to this position a power, the exercise of which constitutes the position a public office. The method of election of central committeemen and the means for filling vacancies in the central committee remain, as before, controlled by statute and are by election at a party primary or by action of the central committee in the case of vacancies.
It is true that there is a difference between the granting of this power to a central committee of a political party, thus constituting membership thereon a public office, and the annexing of such a power to an office that has already previously been constituted a public office. However, this difference has no significance so far as the constitutionality of this grant of power is concerned.
Relator here relies for Ms title to the office of clerk of courts upon a repealed section of the Revised Code which annexed the power to fill vacancies in this office to the already granted powers of the public office of county commissioner. He, of course, supports the constitutionality of this grant of power. ‘ '■
The relator argues that central committeemen are not elected by the electorate as a whole and are, therefore, not responsive to the people. There is nothing in the Constitution that requires that they should be responsive to the people. The office of clerk of courts is not a constitutional office. It is not required by the Constitution that it be an elective office. The General Assembly could make it an appointive office. The General Assembly authorized that a vacancy in the office be filled by appointment, and there is no provision in the Constitution that requires that the holders of the office having the authorised *377 power to make the appointment to fill the vacancy be themselves subject to election by the whole electorate.
Relator argues that Section 305.02, Revised Code, is unconstitutional because it makes no provision for the filling of a vacancy created by the death of an officeholder who was originally elected as an independent. (Note: Section 11, Article II of the Ohio Constitution, as amended by the electorate of Ohio at the general election on November 7, 1961, provides in part that “a vacancy in the Senate for any cause * * * shall be filled by appointment by the members of the Senate who are affiliated with the same political party as the person last elected by the electors to the seat which has become vacant.”) The relator, however, concedes that the officeholder, whose death created the vacancy which is in dispute in this cause, was not an 'independent but was a member of the same political party as the respondent. It is, therefore, not necessary for the court to decide this question, and the court is not here deciding it simply because it is not before us.
The demurrer to the petition is sustained, and, since counsel have agreed that such ruling will be dispositive of the case, the writ is denied.

Demurrer sustained and writ denied.

Weygandt, C. J., Zimmerman, Taet, Matthias and Hurd, JJ., concur.
Bell, J., dissents.
Hurd, J., of the Eighth Appellate District, sitting by designation in the place and stead of Herbert, J.